RENDERED:  FEBRUARY 26, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1412-MR


EDWARD NEUTZ, JAMI NEUTZ,
AND N&R PROPERTIES, LLC                                    APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE SUSAN SHULTZ-GIBSON, JUDGE
                    ACTION NO. 12-CI-004928


JOE D. TAYLOR AND J.D. TAYLOR
& SONS MOVING, INC.                                          APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE:  Appellant Edward Neutz[1] challenges an order of the Jefferson

Circuit Court addressing the effect of non-recourse language contained in a note

executed between the parties to this appeal, as well as the effects of condition

---

[1] Jami Neutz and N&R Properties, LLC are also appellants herein.

precedent and limitation of remedies language contained in a related security agreement. Neutz argues that the circuit court erred in concluding that appellee Taylor established the condition precedent required to enforce any remedies under the security agreement and that the award of damages for breach of the security agreement was unsupported by any competent evidence. Finding no error in the decision of the circuit court, we affirm.

## BACKGROUND

The dispute between the parties stems from a jury verdict and judgment awarding appellee Taylor damages for Neutz's breach of a promissory note and security agreement executed in the sale of a moving company. A previous appeal[2] resulted in an opinion of this Court vacating and remanding the matter for a hearing and findings on the effect of non-recourse language in the promissory note and limitations on remedies provisions in the security agreement.

Because our prior opinion fully and thoroughly sets out the facts of this case, we reiterate them here only as necessary to an understanding of our decision. In 2005, Taylor sold J.D. Taylor & Sons Moving, Inc., a moving company that he had formed in 1994, to Neutz for a purchase price of approximately $1.8 million. To consummate the sale, the parties entered into several contracts and agreements, each effective January 1, 2006, including a

---

[2] *Neutz v. Taylor*, No. 2016-CA-001389-MR, 2019 WL 495055 (Ky. App. Feb. 8, 2019).

$656,000.00 promissory note from Neutz, as maker, to Taylor, as payee, which contained the following language:

> [Neutz] has granted [Taylor] a security interest in all of the stock now or hereafter owned by [Neutz] in J.D. Taylor & Sons Moving, Inc. pursuant to a security agreement of even date herewith (the "Security Agreement"). *This note shall be non-recourse to [Neutz], and [Neutz] is hereby released of all liability hereunder. In the event of default hereunder, [Taylor's] sole recourse shall be to exercise the remedies set forth in the Security Agreement, and any holder hereof (including [Taylor]) shall be deemed by acceptance of this note to have agreed not to take a deficiency judgement* [sic] *against [Neutz] with respect to indebtedness arising hereunder.*

(Emphasis added.) Thus, Neutz granted Taylor a security interest in the stock of J.D. Taylor & Sons as collateral for repayment of the note. Section C of the security agreement alluded to in the promissory note defined events of default under the various loan agreements, including 1) non-payment of sums due under the note for a period of ninety days after the payment was due or 2) Neutz selling, assigning, transferring, or otherwise disposing of his interest in the collateral without Taylor's prior consent. The security agreement also outlined Taylor's remedies in case of default as described in Section C:

> (D) Remedies of [Taylor]
>
> If any default occurs as defined in Section C, [*Taylor's*] *sole remedies as a consequence thereof shall be the following*:

(1) [Taylor] shall have the right to take immediate possession of the collateral without notice or demand or intervention of any court or other legal proceeding, provided that the act of taking possession is peaceful. *As a condition precedent to retaking the collateral, [Taylor] shall pay to [Neutz] an amount, if any, equal to the amount by which the then fair market value of the assets (excluding goodwill and going concern value) of [J.D. Taylor & Sons], less its then liabilities and other liabilities which encumber [J.D. Taylor & Sons'] assets (excluding liabilities owed to [Taylor]), exceeds $225,000 (or $175,000 if a household goods carrier license is not required to operate the business).*

(2) [Taylor] may declare all indebtedness secured hereby to be due and payable and the same shall thereupon become due and payable without any further presentment, demand, protest, or notice of any kind. The waiver of any default hereunder shall not constitute a waiver of any subsequent default. Upon any such default, the parties shall each pay their own reasonable attorney fees and legal expenses incurred in enforcing or attempting to enforce, and in defending, any claims brought hereunder.

(Emphasis added.) The Security Agreement defined "collateral" as the "stock" in J.D. Taylor & Sons.

The acts which appear to have precipitated this dispute commenced in January 2006 when Neutz and his wife Jami formed N&R Properties, LLC, and, subsequently in November 2008, established "Edward Neutz Sons and Daughters

-4-

Moving" as an assumed name of N&R. In 2010, Jami, on behalf of N&R, and Neutz, on behalf of J.D. Taylor & Sons, entered into an Outsourcing Agreement which provided that all moving and storage marketing leads generated by J.D. Taylor & Sons would be referred to N&R for performance. The stated consideration was a commission of 2.5 percent, plus other economic considerations. In addition, Neutz sold all of J.D. Taylor & Sons' assets to N&R in exchange for royalty payments and reduced rent. The record of the proceedings at trial discloses that Taylor characterized the sale as a clandestine and methodical depletion of J.D. Taylor & Sons' assets in an attempt to unjustly enrich N&R's operation of the new company, Edward Neutz Sons and Daughters Moving. Taylor also alleged that, in so doing, Neutz had depleted to zero the value of the stock he had pledged as collateral for his financial obligations to Taylor.

Almost immediately after entering into the Outsourcing Agreement, Neutz defaulted on the note payments and began alleging that J.D. Taylor & Sons was not as valuable an asset as he had been led to believe. At this point, Neutz had paid Taylor approximately $180,000.00 of the purchase price. Taylor thereafter demanded the return of his company but was ultimately required to seek injunctive relief to exercise his right to take "immediate possession of the collateral" as provided for in the security agreement. In 2012, Taylor filed suit against Neutz, alleging breach of the various agreements and unjust enrichment and later amended

his complaint to allege additional claims of fraud and breach of fiduciary duty. Neutz thereafter filed several counterclaims, including an allegation that Taylor had breached the security agreement when he failed to comply with its sole remedies provision.

A five-day jury trial conducted in September 2014 produced testimony from Taylor that the only assets returned by Neutz pursuant to the injunction were stock certificates and keys to trucks that allegedly were not in working order. Taylor also alleged that the stock he received pursuant to the injunction had no value due to Neutz's transfer of the company's assets to N&R. Neutz argued that Taylor had received numerous company assets that retained value, including intellectual property, and that the security agreement required that Taylor establish the fair market value of J.D. Taylor & Sons at the time that the collateral was returned to Taylor, with any amounts above $225,000.00 to be paid to Neutz.

The matter was submitted to the jury on Taylor's claim for breach of the note, but the circuit court concluded that the non-recourse issue was a legal issue to be resolved post-verdict. The jury ultimately found that Neutz breached the note, awarding damages of $431,129.00; that Neutz breached the security agreement, awarding damages of $245,305.00; and that Taylor had not breached the security agreement by failing to meet the condition precedent before retaking

the collateral. The circuit court thereafter entered judgment in accord with the jury verdict and asked the parties to schedule a hearing "to ascertain damages and costs associated with the verdicts rendered herein." The judgment did not specifically adjudicate any amount of damages against any party and noted that the circuit court would retain jurisdiction for determination of the award of attorney fees, costs and statutory damages. The judgment was designated to be final and appealable.

Neutz thereafter moved to vacate the judgment, arguing that the non-recourse note prohibited the entry of a deficiency judgment against Neutz; that Taylor had failed to perform conditions precedent to establish entitlement to the remedies set forth in the security agreement; and that there was no substantial evidence to support the damages awarded Taylor under the security agreement. In March 2015, the circuit court denied Neutz's motion, simply stating in its order that the motion was overruled.

After Neutz's appeal from the judgment was dismissed for failure to appeal from a final and appealable order, the circuit court entered an order clarifying that the December 2014 judgment was not interlocutory and was in fact a final judgment which adjudicated all of the rights of the parties on Taylor's claims against Neutz. That order precipitated the appeal resulting in our opinion remanding the case to the circuit court for a hearing and findings concerning the

effect of the non-recourse language and condition precedent provisions of the parties' agreement.

THE CIRCUIT COURT ORDER ON REMAND

After ordering briefs and hearing oral argument, the circuit court entered findings and conclusions concerning the effect of both the non-recourse provision in the note and the condition precedent provision in the security agreement upon the damages awarded by the jury. The circuit court determined that the non-recourse provision released Neutz from any deficiency judgment and limited Taylor to recovery of the collateral provided for in the security agreement, the J.D. Taylor & Sons stock. The circuit court thus vacated the award of $431,129.00 for breach of the promissory note.

In addition, the circuit court concluded that, as a matter of law, the award of $245,305.00 in damages for the breach of the security agreement must be reduced to $225,000.00, the amount provided for in the security agreement; that the reduction satisfied the condition precedent in the security agreement; and that the sum of $225,000.00 is supported by substantial evidence of record. This appeal followed.

ANALYSIS

Neutz argues that the circuit court's order on remand is erroneous in that: 1) Taylor failed to establish compliance with the conditions precedent to

enforcing the remedies set out in the security agreement; and 2) the award of damages for breach of the security agreement was speculative and unsupported by expert or competent evidence. As noted in our previous opinion, the "construction and interpretation of a written instrument are questions of law for the court." *Cinelli v. Ward*, 997 S.W.2d 474, 476 (Ky. App. 1998) (citations omitted). Further, an appellate court must "review questions of law *de novo* and, thus, without deference to the interpretation afforded by the circuit court." *Id.* (citations omitted). With these factors in mind, we turn to the issues presented.

Concerning the circuit court's conclusion with respect to application of the condition precedent provision, we find no error. The plain language of the instruments in question supports the circuit court's analysis:

> As a condition precedent to retaking the collateral, [Taylor] shall pay to [Neutz] an amount, if any, equal to the amount by which the then fair market value of the assets (excluding goodwill and going concern value) of [J.D. Taylor & Sons], less its then liabilities and other liabilities which encumber [J.D. Taylor & Sons] assets (excluding liabilities owed to [Taylor]), exceeds $225,000 (or $175,000 if a household goods carrier license is not required to operate the business).

Nothing in this provision requires *Taylor*, the injured party, to undertake a valuation of the J.D. Taylor & Sons stock in order to comply with the condition precedent. In our view, because Neutz was in control of the company, had breached the security agreement by depleting the value of the stock through the

unilateral Outsourcing Agreement, had argued that the company was not as valuable as he had been led to believe, and was in the best position to offer proof at trial of the current value of the company, the circuit court did not err in reducing the jury award to the agreed upon sum of $225,000.00, absent evidence that the value of the stock exceeded that figure. As the circuit court properly observed, the damages provided in the agreement are "fixed and ascertainable." Like the circuit court, we are convinced that the condition precedent is satisfied unless Neutz, the party in breach, comes forward with evidence that the fair market value of the company exceeds $225,000.00. Absent such evidence, Taylor is entitled to retake the collateral provided for in the note and security agreement.

These same principles underpin our decision with respect to the quality of the proof concerning the fair market value of the stock. In awarding damages for breach, the jury heard evidence concerning the value of the J.D. Taylor & Sons at the time Neutz purchased the company. Ordinarily, an arms-length purchase transaction between a willing buyer and a willing seller is competent evidence of a company's value. However, the jury also heard evidence concerning the impact of the Outsourcing Agreement on the value of the company—the transfer of assets to N&R; the fact that J.D. Taylor & Sons' phone number and webpage information had been transferred to N&R; and that moving services were no longer being performed by J.D. Taylor & Sons, but were rather

being fulfilled by N&R. Importantly, income tax returns showing the precipitous decline of J.D. Taylor & Sons' revenue after the imposition of the Outsourcing Agreement was clearly competent to show diminishment in the company's value. The circuit court on remand acted well within its authority in reviewing this evidence and concluding that the condition precedent provision had been satisfied.

In sum, our *de novo* review convinces us that the circuit court clearly understood the plain language of the contract between the parties, properly applied that language to the facts of record, and reduced the jury award as a matter of law. Nothing in the arguments presented allow us to disturb its well-reasoned decision.

The judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT
EDWARD NEUTZ:

R. Kenyon Meyer
Anthony M. Zelli
Louisville, Kentucky

ORAL ARGUMENT FOR
APPELLANT EDWARD NEUTZ:

Anthony M. Zelli
Louisville, Kentucky

BRIEF AND ORAL ARGUMENT
FOR APPELLEE JOE TAYLOR:

Stuart Alexander
Louisville, Kentucky